# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACUITY BRANDS LIGHTING, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> vs. <br><br> ULTRAVISION TECHNOLOGIES, LLC, <br><br> Defendant/Counterclaim Plaintiff. | Civil Action No. 19-2207-MN |

### STIPULATED ORDER REGARDING DISCOVERY
### OF ELECTRONICALLY STORED INFORMATION

**1. General Provisions**

    **a. Scope.** This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), and any other applicable orders and rules. The parties' agreement to the terms of this Order should not be deemed an acknowledgement that any information hereby excluded from discovery would or would not be discoverable in the absence of this Order. Nothing in this Order shall waive in whole or in part any objection raised by a party in its written responses to specific discovery requests served in this action.

**b. Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

**c. Modifications.** This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**d. Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    i.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

    ii.    Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

**e. Privilege and Lack of Waiver.**

    i.    The parties conferred on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

        ii.        The parties are not required to include in a privilege log any documents that that came into existence on or after August 26, 2019, provided, however, that to the extent any privileged documents are relevant, but do not relate to the claims of Acuity's Complaint or Ultravision's Counterclaims, Ultravision is not required to include in a privilege log any such documents that came into existence on or after March 27, 2018. For the avoidance of doubt, Ultravision is not required to include in a privilege log any communications between it and its counsel that relate to Investigation No. 337-TA-1114 in the U.S. International Trade Commission, except to the extent that they relate to Acuity Brands Lighting, Inc. and/or their subsidiary entities.

        iii.        Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

        iv.        Pursuant to Federal Rule of Evidence 502(d), the production of privileged or work product protected ESI, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in the pending case or in any other federal or state proceeding.

        v.        Information that contains privileged matter, attorney work product matter, or information protected by any other privilege or immunity shall be immediately returned or destroyed if such information appears on its face to have been inadvertently produced.  Likewise, the Party that receives information that appears on its face to have been inadvertently produced shall immediately notify the producing party that such information had been produced.

        vi.        The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose and shall not affect the producing party's right to seek return of the inadvertently produced document, data, information, or thing.

        vii.        The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected except to challenge the privilege or protection.

2.    **Initial Discovery in Patent Litigation.**  The initial discovery dates are set forth in the Scheduling Order.[2]  Absent a showing of good cause, additional discovery shall be limited to a term of 6 years prior to the assertion of the claim or counter-claim in this case, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

3.    **Identification.**  To the extent that a party intends to use a document produced in native format for depositions, pleadings, trial or for any other purpose where the identification of individual pages is necessary, that party may sequentially number the individual pages of the document and include the appropriate confidentiality designation. For example, with respect to information produced in native format and marked with the Bates number "227543," a party wishing to use that document may number the individual pages as "227543.1; 227543.2, …"

4.  **Specific E-Discovery Issues.**

    a.  **On-Site Inspection of Electronic Media.**  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

---

[2] The Scheduling Order is D.I. 36 in Civil Action No. 1-19-cv-02207-MN.

b. **Electronic Mail.**

    i. E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, infringement contentions and accompanying documents, and invalidity contentions and accompanying documents pursuant to Scheduling Order. The exchange of this information shall occur at the time required under the Federal Rules of Civil Procedure, Local Rules, or by order of the court. After these exchanges, a party may request that the other party provide a specific listing of likely e-mail custodians, including a specific identification of the ten most significant listed e-mail custodians in view of the pleaded claims and defenses, which must be provided within two (2) weeks.

    ii.    Each requesting party may also propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. The court may allow additional discovery upon a showing of good cause.

    iii.    Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each

word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

    iv.  Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its e-mail production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

    v.  Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the

production and shall be considered when determining whether to shift costs for disproportionate discovery.

      c. **Search Methodology.** A producing party may elect to use search terms to locate potentially responsive ESI. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and will be considered when determining whether to shift costs for disproportionate discovery. The producing party shall search (i) the non-custodial data sources identified; and (ii) emails and other ESI (where applicable under paragraph 4(b)) maintained by the custodians identified.

      d. **General Document Image Format.** Except as otherwise provided for in this Order, all documents existing in electronic format shall be produced as specified in Production Specifications for ESI listed in Exhibit B.

      e. **Footer.** Each document image shall contain a footer with a sequentially ascending production number.

      f. **Native Files.** A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

      g. **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

      h. **Production media and encryption of productions.** Unless otherwise agreed, the

parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, external hard drives, flash drives, or SFTP, as appropriate. The producing party shall encrypt the production data using WinRAR or other similar encryption, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD, external hard drive, flash drive, or SFTP to which the production data is saved.

    **i. Source code.** This Order does not govern the format for production of source code, which shall be produced pursuant to the relevant provision of the Protective Order, if necessary.

    **j. Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions. In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

    **k. Metadata fields.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian,[3] File Path, Email Subject, Conversation Field/Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File

---

[3] To the extent that a party chooses to de-duplicate documents prior to production, a field shall identify all other custodians from whom the same document was collected.

Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

Dated: August 7, 2020                                       Respectfully submitted,

**DUANE MORRIS LLP**                                        **BAYARD, P.A.**

*/s/ Richard L. Renck*                                      */s/ Stephen B. Brauerman*
Richard L. Renck (No. 3893)                                 Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 1600                             600 N. King Street, Suite 400
Wilmington, DE 19801-1659                                   Wilmington, Delaware 19801
Telephone: (302) 657-4906                                   Telephone: (302) 655-5000
rlrenck@duanemorris.com                                     sbrauerman@bayardlaw.com

OF COUNSEL:                                                 Alfred R. Fabricant
                                                            Joseph M. Mercadante
Matthew S. Yungwirth                                        Daniel J. Shea
Glenn D. Richeson                                           FABRICANT LLP
DUANE MORRIS LLP                                            230 Park Avenue, 3rd Floor W.
1075 Peachtree Street, Suite 2000                           New York, NY 10169
Atlanta, GA 30309                                           Telephone: (212) 257-5797
Telephone: (404) 253-6900                                   afabricant@fabricantllp.com
msyungwirth@duanemorris.com                                 jmercadante@fabricantllp.com
gdricheson@duanemorris.com                                  dshea@fabricantllp.com

*Counsel for Plaintiff*                                     *Counsel for Defendant and Counterclaim*
*Acuity Brands Lighting, Inc.*                              *Plaintiff Ultravision Technologies, LLC*


SO ORDERED, this 11th day of August 2020.

*[signature]*
The Honorable Maryellen Noreika
United States District Judge

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

## EXHIBIT B

## PRODUCTION SPECIFICATIONS FOR ESI

I. Documents created or stored electronically must be produced in an electronic format, and not printed to paper or PDF. All electronically stored information ("ESI") shall be produced in electronic form (the "production set").

Each page or natively produced document will have its own unique identifier ("Bates number"), which must be consistently formatted across the production, comprising of an alpha prefix and a fixed length number of digits (*e.g.*, "PREFIX00000001").

The production set shall consist of, and meet, the following specifications:

A. <u>Image Files</u>. All ESI that is not produced in native format will be rendered to single-page, black and white, Group IV *tagged image file* (".tif" or ".tiff") images with a resolution of 300 dpi, where in the file name for each page is named after its corresponding Bates number. Records in which a color copy is necessary to interpret the document (*e.g.*, photographs, presentations, AUTOCAD, etc.) will be rendered to higher resolution, single-page *joint photographic experts group* (".jpg" or ".jpeg") format. Endorsements must follow these guidelines:

    a. Bates numbers must be stamped on the lower right hand corner of all images.

    b. Confidentiality must be stamped on the lower left hand corner of all images.

    c. Other pertinent language may be stamped on the bottom center, or top of the images, as deemed necessary.

B. <u>Load Files</u>. All ESI must be produced with appropriate data load files, denoting logical document boundaries. The following files should be included within each production set.

    a. A Concordance delimited ASCII text file (".dat").

        i. The .dat file will contain metadata from the original native documents, wherein the header row (*i.e.*, the first line) of the .dat file must identify the metadata fields.

        ii. The .dat file must be delimited with the standard Concordance delimiters (the use of commas and quotes as delimiters is <u>not acceptable</u>):

            ASCII 020 [¶] for the comma character;

            ASCII 254 [þ] for the quote character; and

                        ASCII 174 [®] for new line.

        iii.    All attachments, or *child* records, should sequentially follow the *parent* record. For every parent and attachment record, the .dat file must include a BEGATTACH field populated with the beginning bates of the parent record, and an ENDATTACH field populated with the ending bates of the last attachment or child record.

    b.    Image cross-reference files, *Opticon* image file (".opt") and *IPRO View Load* file (".lfp"), which link images to the database and identifies appropriate document breaks.

C.    <u>Text Files</u>. All ESI will be produced in a word searchable, text file format (".txt"), at the document level for all records. Such text files may be delivered as multi-page ASCII or, where appropriate, Unicode text files and named after its corresponding Bates number. All records must include:

    a.    *extracted text* for all ESI, at the document level, wherein the text files must have page breaks that correspond to the pagination of the image file; and/or

    b.    *optical character recognition* ("OCR") text, at the document level, for records where: (1) embedded or extracted text does not exist in the electronic document; (2) the document originated in a hard-copy format; and/or (3) OCR must be run on documents so as not to reveal the contents any redacted material.

The text files may be placed in an individual folder, from which the full path for each text file should correspond to its record in the .dat file and populated under the *Text Path* field.

D.    <u>Native Files</u>. ESI may be produced in its native format, with its file name corresponding to its designated Bates number. Furthermore, all Microsoft Excel, PowerPoint and Access file types, multimedia files (*e.g.*, ".avi", "mpeg", ".wmv", ".mp3", etc.), AUTOCAD files, source code, and other files may be requested and/or agreed upon by counsel to be produced in native format. All native files produced must contain a corresponding image placeholder with appropriate endorsements, as well as extracted text.